Okay, may it please the court. I'm Robert Jobe and I'm appearing on behalf of the petitioner Balbir Singh Gill. This is much like the last case, except in this case the claim is not that he has been persecuted by Congress Party members, but that he was persecuted by members of Akali Dal Bottle, which is another Sikh political party, but it's a political party that does not support this movement for an independent Sikh state. Now, just as in the last case, however, in addressing whether or not Mr. Gill could relocate, the board never discussed whether he might face harm at the hands of the bottle party that attacked him in the past. Again, their entire analysis is whether the Punjab police or the central police would track him down to some other part of India to persecute him. The analysis from the board begins on page 3 of the record where the board says the immigration judge found that the local police, no matter whom they may support in different states, do not cooperate to find individuals who are not of interest to the central authorities. Only high-profile militants are targeted for arrest by police acting outside of their home state, not persons such as respondents who are low-level Akali Dalmand members. It goes on to say the respondent would not be of interest to the central authorities and that the local Punjab police would not seek him out throughout India. And then on the following page it sums up, given the unlikeliness that the Punjab police have the motivation or means to look for him outside of Punjab, internal relocation is reasonable. But he wasn't persecuted by the Punjab police. The guy was persecuted by members of Akali Dal bottle. This entire analysis is inapposite. For that reason, again, we would submit that the board committed a legal error. It did not apply the required presumption, which has to be based on the original claim. And as a result, the case has to be sent back so that they can engage in the proper analysis. I assume that in this case, like in the previous case, though, you would indicate that if they're based on the original fear, i.e., that he was being persecuted because of his active political involvement and advocacy of his Mon party, that either the police or these people in the, I forget what the exact name of the other party is, but the other Sikh party that was persecuting him would need to be, he would need to be protected from either if he were relocated. Is that correct? Yes. I mean, the analysis would have to consider the central police, the Punjab police. Of course, it's relevant whether the Punjab police are going to track this guy down in some other state, although it's extremely unlikely. But it also has to consider the local police in the state of relocation and the members of the political party that attacked him and upon which his past persecution claim is based. Does that political party exist in other parts of India? It primarily operates. One party, right? And they split or something? Well, it's not. They're actually separate political parties. And Akhali Dal Bottle does primarily operate in Punjab, but it's in an alliance with the BJP, which is a Hindu nationalist party which controls the entire federal government in India. The only other thing I want to say is the government keeps going back to this Library of Congress report to suggest that it says that only high-ranking or hardcore individuals, high-profile individuals, are at risk in the state of relocation. That's not what it says. What the report says is if a person seeks to escape the attention of local police, in this case the Punjab police, and is not of interest to the central authorities, then internal relocation is feasible. And it makes clear throughout that it's not talking about local police in the area of relocation. It's talking about whether you can escape the Punjab police by moving to another state. For example, on the following page, it quotes a report that says that internal location to escape the attentions of the local police in their home area would not be unduly harsh. In the home area. And then it goes on to say, most incredibly, that in this report, it summarizes and characterizes a 2003 report that was prepared by USCIS. And it's that report upon which the government relies and the board relies in all these cases. But the most incredible thing about their reliance is that this Library of Congress report, which is characterizing the 2003 USCIS report, says expressly that the USCIS report does not specifically address the situation of how members of the Mon party who relocate in fear of persecution are treated. This is the government's entire case. This is the sole piece of evidence upon which it relies in every one of these cases. And yet the report is express. It doesn't address the situation of Mon party members. Where in the Library of Congress report do we find what you just referred to? That, Your Honor, is the most relevant pages are 251 and 252. It's a short report. It begins on 249. Page 249 is the summary of its findings, which talks about escaping the attention of the local police. And what I'm really talking about, though, is where the Library of Congress report says that the USCIS report does not deal with the issue of the Mon. Page 252. 252. Okay. But doesn't what you just read before sort of defeat your claim, at least if we go by that report? Because it's saying that the local police, or you're saying the local police or the Punjab police, they're not interested in people once they get away, or they can't be. Well, no. What it's saying is that the Punjab police will only engage in this long-arm enforcement for people who have a high profile. And it's not any of your clients here? I'm not going to concede that these clients don't have a high profile. They don't define that. The point, however, is that when you look at these decisions, half the time when Judge Griswold is characterizing this, he's saying that the finding is that members of Akali Daulman who don't have a high profile are not at risk from the Punjab police if they relocate. It doesn't say that. It doesn't say anything about that. Because they couldn't find information about how Akali Daulman members are treated, the report makes two claims. High profile militants are at risk, and people who simply hold pro-Khalistani views are not. And then it goes on to say, but we don't have any information about how Akali Daulman members are treated. Our guy, none of these people were persecuted simply for possessing pro-Khalistani views. In each and every case, they were persecuted for engaging in public advocacy on behalf of Khalistan. So even if you accept those findings, which I don't, they don't apply to any of these petitioners. Okay. I wanted to save your time. Okay, we'll hear from the government. Sorry. May it please the Court. Brianne Cohen on behalf of the Attorney General. I'd like to start by addressing where in the agency decision the agency specifically considered petitioner's claim that he would fear the Badal party, which is primarily located and, in fact, limited to the Punjab region. First, on page 2 of the BIA decision, the agency clearly recites that petitioner's argument on appeal was that members of the Badal party who are affiliated with the national BJP party. So this belies any claim that the agency was not aware of and considering petitioner's claim as it relates to the Badal party. Similarly, page 4 of the immigration judge's decision also indicates that it is considering as part of his claim fear at the hands of the Badal party. This leads into the next point about where the documentary evidence specifically relates to man party members. And the documentary evidence and the history that it gives illuminates that the Badal party, and really what distinguishes the Badal party from the rival Sikh party, the man party, is in part holding pro-Khalistan views. So where the agency relies on documentary evidence talking about the treatment of individuals who hold pro-Khalistan views, it is specifically relevant to man party members. And in this case, between the four cases, there are all slight variances in what the claims were. In this case, we have a petitioner who limited his claim to mistreatment at the hands of Badal party members while he was in the Punjab region, and then a fear that is somewhat related in that the Punjab police will seek him out in the future if he relocates. But your opposing counsel, of course, in this case and the previous cases, made the point that if the original physical harm was caused by members, in the one case of the Congress party, the second by the Badal party, the petitioner is relocated somewhere else in India, the BIA starts talking about the police, the state police and their relationship with the Punjab police. They don't really specifically talk about members of the Congress party or the Badal party. How does that – I mean, I know there was the allegation that they were both controlled by the same people. That may have been true of the Congress party, but how could that be true of the Badal party? It's a very unusual, primarily Punjabi-located party that's not in national power. They can't be talking about the same control, can they? Well, so the Badal party, by petitioner's testimony itself and reflected in the country reports, the Badal party is limited to the Punjab party. So petitioner's claim has to rely in part on some way that outside of the Punjab that somebody would seek to harm him. And so I think that's why his claim is the way that it is. But – and I may agree with you. I don't know. But your opponent suggests that, you know, the BIA just didn't even treat this. You know, he's going outside and being relocated. It wasn't the police that harmed him. It was people in the Badal party. It doesn't talk about how that relocation solves that problem. How can that be reasonable? Well, so the relocation analysis is limited to the basis of the original claim, at least in terms of the burden being on DHS. And that's what the government meant here. The original claim relates to the Badal party, but in this petitioner's case, he also did say that he feared Punjab police based on past experiences that his father experienced. In that case, because it's not necessarily related to the original claim, the burden would be on petitioner. But in this case, the agency did consider all of that because that is what exactly was presented to them. And the – I think the reason that some of the focus is on the long-arm enforcement and Punjab police is because it's petitioner's way of showing that because his claim is related to a political party that is geographically limited to the Punjab region, this is how he will come to the attention of other authorities. And so that's where the agency examines that evidence to address that. I get your point with that. What about your opponent's point that the Library of Congress report that referred to the USCIS report specifically disclaimed having addressed how the Mon party people are treated? What's your response to that? Well, the Library of Congress report specifically – it does not use the word Mon party. That is not the word that it uses. But it does, again, refer to individuals holding pro-Khalasam views. Well, that is the – that's only the Mon party, right? Exactly. And so while it doesn't use the word Mon party, that is what distinguishes Mon Sikhs from, for example, Badal party Sikhs. And the broader point that I just wanted to raise is that the country conditions evidence show why this claim is such a local claim. And it is the unique history of the Punjab region and the tensions that occurred in the Punjab regions because of the pro-Khalasam. But you still can't rely upon that report to say that it addresses the problems caused or the persecution that comes to members of the Mon party, right? Well, it addresses it to the extent that it shows that outside of the Punjab region that the Mon party members don't face the type of treatment that they would face in the Punjab region for expressing the same views. But it doesn't say that, does it? It does to the extent that it says that holding pro-Khalasam views would not make somebody a target. A high-profile militant would. And only hardcore militants are targeted outside of the Punjab region. Why would they accept out the official name of the party? I'm shorthanding it for Mon. Mm-hmm. Why would they accept that out if that's what they intended to convey, what you just said? Well, actually, the Library of Congress report is specific. Although the text of it doesn't use Mon party, I believe it's the Library of Congress report that specifically is in response to questions about the Mon party. So it is a more specific piece of evidence than perhaps some of the more general country conditions records in there. And the ‑‑ I think the report as a whole gives the background of what distinguishes Mon party members from other ‑‑ from Badaw party members or other Sikhs in India. Which is the advocacy of the ‑‑ The pro-Khalasam view. Okay. And so taken as a whole, it does actually. And the title of that report was in response to an inquiry specifically about the treatment of Mon party members and the feasibility of relocation outside of the Punjab region. DHS's position is, yeah, it does exclude them, but we're just kidding. Wink, wink. It does consider them in the other part. I'm sorry. Can you ‑‑ In other words, even though it says it doesn't consider them, when you look at the language of the rest of the report about people who advocate Khalistan outside of Punjab are okay. Well, as a whole, all of the country reports show that Mon party members outside of Punjab are not likely to face harm as they would in Punjab. That the unique history of the Punjab region makes the treatment of Mon party members different than it would in one of the other 28 states in India. And that is really the basis of the agency's decision. And that is well supported by the country conditions evidence and even petitioner's own testimony in this case. Which indicates that the Badaw party does not operate outside of the Punjab region. And that his fear would be somehow that some other local police would become aware of his activities. Which I think my colleagues have shown the record demonstrates that the infrastructure and mechanisms are simply not in place for that sort of long‑arm enforcement to occur. And so the agency's decision here is well supported to show that the government met its burden to rebut the presumption that Gil, who the agency presumed experienced past persecution, would have a well‑founded fear that he could relocate within India. And what's the standard of proof to rebut that? Is it compelled by the evidence? The standard for the agency is a preponderance of the evidence. And this court would look at the whole for sufficient ‑‑ What do they have to do to overcome that? To overcome? The government has to show by a preponderance of the evidence. And what about the other side? If they want to overcome that, what do they have to show? I'm actually not sure other than maybe perhaps showing evidence that is contrary to what the government has submitted. I don't know that the regulation provides for a standard to rebut the rebuttal of the presumption. Thank you. Thank you. You've held up very well. You're almost done. Almost. Perhaps the most frustrating part of arguing these four cases is the government's reliance on these two sentences in that Library of Congress report. They read that as meaning that people who simply hold a pro‑Kalistani view will not be mistreated in the area of relocation. But the report doesn't say that. It drops a footnote. It explains where this USCIS report is online. It's available to anybody who wants to look at it. And the discussion that they're characterizing here in that report is under a section called Pursuit of Certain Sikhs Who Have Relocated to Other Parts of India by Punjab Police with Help of National or Other State Authorities. Consistent with everything else in the report, those two sentences there are talking about whether the Punjab police would have the motivation to track down certain individuals in other parts of India. It says that if you simply hold a pro‑Kalistani opinion, the Punjab police aren't likely to do that. On the other hand, if you're a high‑profile terrorist, they are likely to do that. Big surprise. Do we know anything at all about ‑‑ I guess there are presumably Mann Party members in other parts of India. There are certainly other Sikh communities, although ‑‑ Well, there's nothing in any of these records that talks about how many Mann Party members might be scattered in those Sikh communities throughout India. But it's simply wrong to suggest that anybody who's pro‑Kalistan is a member of the Mann Party. There are many. There are other parties. So whether they are, though, the pro‑Kalistan, I mean, is there any evidence at all about demonstrations or efforts to promote the separate state in any place other than in the Punjab area? In these particular records, it's very limited. And that's why we would say the government hasn't met its presumption. But in that one Library of Congress report, not this one about internal relocation, but the other one that I referenced earlier, it does talk about people being charged with sedition for advocating for Kalistan, including Simranjit Singh Mann, the head of the party, who has cases pending against him throughout India. Well, he's been around for a long time, and he's still actually free at least at the moment, right? Yes, but he's been arrested some 50 times, and there are 80 different cases. 50 years or something. All right. Thank you very much. Thank you both for your argument. The case just argued is submitted.
judges: Fisher, M. Smith, Bucklo